

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
NEW YORK REGIONAL OFFICE
BROOKFIELD PLACE
200 VESEY STREET, SUITE 400
NEW YORK, NEW YORK 10281-1022

WRITER'S DIRECT DIAL LINE
(212) 336-0183

March 7, 2014

<u>Via ECF</u>
Honorable Alison J. Nathan
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:     <u>SEC v. Kinnucan et al., 12-CV-1230 (SDNY) (AJN) (AJP)</u>

Dear Judge Nathan:

      We represent plaintiff Securities and Exchange Commission (the "Commission") and submit this letter in response to the Court's March 4, 2014 Order ("March 4 Order"). The March 4 Order seeks the Commission's position on the relevance of certain factors to the Court's assessment of the defendants' financial condition (for purposes of determining the amount of civil penalties to be imposed under Section 21A of the Securities Exchange Act of 1934). Specifically, the Court asks for the Commission's position on the relevance of an April 2012 letter submitted by the wife of defendant John Kinnucan and the fact that Mr. Kinnucan relied on court-appointed counsel in a parallel criminal proceeding. For the reasons set forth below, plaintiff submits that these factors should not prevent the Court from imposing the maximum civil penalty against the defendants on a joint and several basis.

      As the March 4 Order recognizes, one factor that courts consider in determining the civil penalty to impose in an SEC enforcement action is whether the penalty should be reduced due to the "defendant's demonstrated current and future financial condition." March 4 Order, *citing SEC v. Rajaratnam*, 822 F. Supp. 2d 432, 433 (S.D.N.Y. 2011) and *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007). However, the cases addressing this issue make clear that it is a defendant's burden to submit admissible evidence to establish its financial condition. *See, e.g., SEC v. Rabinovich & Assoc., LP*, 2008 WL 4937360, at *6 (S.D.N.Y. Nov. 18, 2008) (imposing maximum penalty where defendant "failed to present any evidence whatsoever as to his financial circumstances"); *SEC v. Cavanagh*, 2004 WL 1594818, at *31 (S.D.N.Y. July 16, 2004) (imposing penalties and rejecting defendant's claim that a penalty would financially destroy him where none of the defendants presented any evidence warranting a reduction in the size of the penalty).

      Placing the burden on the defendant is consistent both with elementary notions of fairness – since the defendant is in the best position to know the full scope and state of its financial condition – and with federal procedural rules. *See* Fed. R. Civ. P. 56(c) (setting forth

Honorable Alison J. Nathan
United States District Judge
Southern District of New York
March 7, 2014
Page 2 of 3

requirements for supporting factual positions in the summary judgment context).  Accordingly, in cases where courts do not impose a penalty due to a defendant's claimed impoverishment, they rely on admissible evidence that the defendant provided the court.  *See, e.g.*, *SEC v. Hedgelender LLC*, 786 F. Supp. 2d 1365, 1373 (S.D. Ohio 2011) (imposing lesser penalty where defendants had each submitted affidavits demonstrating their current financial straits); *SEC v. Druffner*, 517 F. Supp. 2d 502, 513 (D. Mass. 2007) (finding no penalty warranted where defendant had submitted an affidavit concerning his finances, including at least one tax return).

Here, defendants have not responded to plaintiff's summary judgment motion nor put before the Court any evidence of their financial condition.[1]  The March 4 Order identifies documents submitted by Mr. Kinnucan's wife early in the litigation concerning his financial condition.  However, the Court has previously found that Mr. Kinnucan's wife "is not a party to this litigation and does not represent that she is Mr. Kinnucan's attorney" and therefore "is not permitted to appear on behalf of another individual."  Order, dated May 4, 2012 [Dkt. # 9].

In addition, there is no way to know whether the documents submitted by Ms. Kinnucan – which are more than two years old – provide a current and complete depiction of the defendants' financial condition.  Mr. Kinnucan has been convicted of fraud.  His wife acknowledged in her April 2012 submission that Mr. Kinnucan had engaged in a pattern of conduct of which she had no knowledge.  In such circumstances, it does not seem prudent to rely on a preliminary, unsworn submission from Mr. Kinnucan's wife to draw conclusions concerning the defendants' financial condition.[2]  Accordingly, the defendants simply have not met their burden of establishing what their financial condition is such as to justify any reduced penalty amount.

On the contrary, defendants' egregious conduct – running a business that profited from peddling material nonpublic information obtained by corrupting sources at public companies – warrants the maximum penalty under the Exchange Act.  Though the requested penalty amount may seem large in light of the defendants' purported profits from the conduct, that amount is merely a reflection of the consequences that result when those in possession of illegal inside information provide tips to investment firms that are able to place large trades based on that information.  As the Second Circuit recently noted in an analogous case involving hedge fund

---

[1]  Though the Commission has obtained certain brokerage records for Mr. Kinnucan, we have not undertaken to develop a comprehensive picture of defendants' current or future financial condition.  The Commission is not in possession of evidence that conclusively demonstrates defendants' current or future financial condition.

[2]  Similarly, while the Court may draw an inference about Mr. Kinnucan's financial condition based on his representation by a public defender in his parallel criminal proceedings, that inference by itself is not enough to meet defendants' burden of proof concerning their financial condition.

Honorable Alison J. Nathan
United States District Judge
Southern District of New York
March 7, 2014
Page 3 of 3

insider trading, "[t]he tippee may make a modest wager or take a deep plunge; she may act at the ideal moment, or sacrifice some potential profit by trading prematurely or delaying too long. The tipper is liable for the tippee's gains, whatever they may be." *SEC v. Contorinis*, -- F.3d --, 2014 WL 593484, at *4 (2d Cir. Feb. 18, 2014) (affirming that district court may require tipper of inside information to disgorge the trading profits of its tippees). At the time of his conduct, Mr. Kinnucan was fully aware of who his clients were and what they could do with his information. Consequently, "imposition of an additional civil penalty is called for here in order to effectuate Congress's purpose of making insider trading a money-losing proposition, both for [Mr. Kinnucan] and for those who would consider it." *SEC v. Gupta*, 2013 WL 3784138, at *2 (S.D.N.Y. July 17, 2013) (imposing maximum three time penalty).

      We are available at the Court's convenience to address any further questions the Court may have.

                                          Respectfully,

                                          s/
                                          Matthew J. Watkins
                                          Daniel Marcus
                                          Counsel to Plaintiff
                                          Securities and Exchange Commission

cc:      John Kinnucan (by U.S. mail to Oklahoma City FTC, return receipt requested)